IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DOROTHY COACHMAN, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 04-AR-3344-S |
| } | |
| EASTERN HEALTH SYSTEM, INC., } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Before this court is the motion for summary judgment of defendant, Eastern Health System, Inc. ("EHS"). Plaintiff, Dorothy Coachman ("Coachman"), who is black, alleges that EHS, her employer, violated 42 U.S.C. § 1981 by discriminating against her on the basis of her race when it failed to promote her on two occasions. Upon consideration of the briefs and evidence, and for the following reasons, this court concludes that EHS's motion for summary judgment is due to be granted.

*Summary Judgment Facts[1]*

Coachman began her employment with EHS as a security officer on July 15, 1996. Before starting at EHS, Coachman worked on an

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). In accordance with this standard, the following statement of facts includes both undisputed facts and the facts according to the plaintiff's evidence, where there is a dispute.

assembly line for a food products company, as a cashier at Burger King, as a security officer at Riverchase Security Service, where she operated a metal detector, and as a security officer with TASP Security Service, where she manned a security post at a skating rink and handed out job assignments to other security officers.  Coachman holds a B.S. in Human Resources Management from Faulkner University.

In February 1998, EHS promoted Coachman to security shift supervisor, a position in which she supervised four other security officers with whom she shared patrol duties.  While serving as a shift supervisor at EHS, Coachman was reprimanded or spoken to on nine occasions for infractions including lateness, failure to follow procedures, and failure to schedule adequate staff to cover her shift.  Although Coachman discounts some of these citations because they were given to her by Rick Silvis ("Silvis"), who was eventually promoted instead of her, at least some citations are not disputed.

On two occasions, once in 2003 and again in 2004, a security manager position opened at EHS.  Coachman applied for the security manager position on each occasion, but was not selected for either promotion.  Instead, EHS promoted two white EHS employees, Silvis in 2003 and Steve Norman ("Norman") in 2004.  Coachman alleges that she was more qualified than both Norman and Silvis and that she was denied the promotion because of her race.

The security manager job is a managerial position that includes responsibility for managing the day-to-day administrative and operational functions of the department and supervising the activities of all security personnel.  The security manager is second-in-command in the Security Services Department, and the position requires providing continuous training for officers and supervisors, coaching department personnel, coordinating with other departments and divisions of EHS, acting as a liaison between EHS and law enforcement, and conducting internal investigations.  EHS required candidates for the security manager position to have either two years of specialized education or training in the security or loss prevention field, or a combination of formal education and three to five years' managerial experience in security, loss prevention, or a closely related field.

For the 2003 security manager opening, the applicants met with an interviewing panel, which consisted of the director of security, Charles Tyson ("Tyson"), the employment recruiter, Bernard Wilkinson ("Wilkinson"), and the manager of employee relations, Cheryl Ray ("Ray").  After the interviews, Wilkinson and Ray determined that Silvis should be selected.  Tyson considered the panel's recommendations and his own assessment of the applicants, and offered the promotion to Silvis.

Before working with EHS, Silvis was director of public

safety for Century Plaza Mall, assistant director of security for Riverchase Galleria, and operations director and chief of security for Silver Sands Mall.  Silvis also served for 20 years in the U.S. Air Force where he supervised more than 120 people.  At EHS, Silvis was the relief supervisor and was responsible for conducting training.  In this position, he never received any reprimands.  Silvis' training and education included coursework in Operations Management, Communications and Public Affairs, Leadership and Management, Resources Management, and Law Enforcement as well as instructor training and M.B.A. classes.  Finally, Silvis had a record of good attendance, punctuality, and professionalism and performed well during his interview.

   The second opening for the security manager opening occurred in April 2004.  This time, Tyson and Wilkinson separately interviewed the internal candidates for the position.  Wilkinson recommended Norman and, based on Wilkinson's recommendation and his own assessment, Tyson offered Norman the position.

   Prior to working at EHS, Norman had served as an officer, a Sergeant/Supervisor and, ultimately, a Captain in the U.S. Postal Police, supervising other supervisory level employees.  During his time as a manager at the Postal Service, Norman was never the subject of a union grievance.  Norman had spent one year as an immigration and detention officer for the Immigration and Naturalization Service and had served 13 years in the U.S. Army.

As an Army Staff Sergeant, Norman had approximately 100 subordinates.  In addition to his high school education, Norman completed coursework in Basic Leadership, Instructor Training, and Management Leadership and Development and attended classes in the Non-Commissioned Officer Academy.  Norman was never disciplined during his time at EHS and, instead, was commended for excellent communication and professionalism.

*Analysis*

In *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), the Court laid out the shifting burdens framework for discrimination suits.  To begin, the plaintiff bears the burden of setting out, by a preponderance of the evidence, a *prima facie* case of discrimination.  If the plaintiff successfully makes a *prima facie* case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for the employee's rejection.  If the defendant meets this burden, the plaintiff then bears the burden of showing by a preponderance of the evidence that the legitimate reasons offered by the defendant were a mere pretext for discrimination.  *Id.*

There is conflicting Eleventh Circuit case law about the precise requirements for a *prima facie* case of discrimination in the context of a promotion controversy, and this intra-circuit split has implications for the instant case.  In *Lee v. GTE Fla.,*

*Inc.*, 226 F.3d 1249 (11th Cir. 2000), the Eleventh Circuit held that, to establish a *prima facie* case of discrimination, a plaintiff must prove:

> (1) that she is a member of a protected minority; (2) that she was qualified and applied for the promotion; (3) that she was rejected despite these qualifications; and (4) [that] *other equally or less qualified employees who are not members of the protected minority were promoted*.

226 F.3d at 1253 (emphasis added).

However, two years earlier, in *Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998), the court had specifically rejected the fourth prong of this analysis. After a lengthy discussion of conflicting Eleventh Circuit authority on this issue, the court in *Walker* held that a plaintiff is not required to make the "equally or less qualified" showing at the *prima facie* stage. Instead, under *Walker's* fourth prong, the plaintiff must merely show that "the employment position remained open or was filled by a person outside the protected class to which the plaintiff belongs." *Id.* at 1180. More recently, in an unpublished opinion affirming a decision of this court, the Eleventh Circuit identified the *Walker* standard as the correct *prima facie* standard. *Summerlin v. M & H Valve Co.*, No. 05-11030, 2006 U.S. App. LEXIS 1247 (11th Cir. 2006). However, the *Summerlin* panel made no mention of *Lee*,[2] and thus did not acknowledge the intra-

---

[2] *Lee's* holding cannot be attributed simply to an oversight, since *Lee* cited *Walker* for legal propositions unrelated to the *prima facie* analysis. In addition to disregarding *Lee*, *Summerlin* failed to acknowledge *Alexander v.*

circuit division on the issue extant after *Walker*.

In this case, the question of whether Coachman has made out a *prima facie* case of discrimination depends on which of these conflicting standards controls. Under *Walker* and *Summerlin*, Coachman has successfully articulated a *prima facie* case, since she has shown that she is black, that she was qualified for the promotion both times that she applied,[3] that she was rejected on both occasions, and that the promotion was awarded, on both occasions, to white applicants. Under *Lee*, however, Coachman has not made out a *prima facie* case, since she has not shown that the successful applicants were equally or less qualified than she was. In fact, the record suggests that Silvis and Norman were both more qualified than Coachman since each of them had more leadership experience and training and a cleaner disciplinary history.

Fortunately for this court, it is not called upon at this time to divine whether *Walker* or *Lee* expresses the current law of the Eleventh Circuit because EHS has articulated one or more

---

*Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000), which also includes the fourth "equally or less qualified" prong as an element of a plaintiff's *prima facie* case of discrimination.

[3]Although EHS maintains that Coachman is not qualified because her supervisory experience does not involve the "supervision of supervisors," it appears that her combined education and managerial experience meet the minimum qualifications for the position. The significance of her lack of higher managerial experience (*i.e.,* the "supervision of supervisors"), if any, is at the "equally or less qualified" prong of the *prima facie* analysis or at the "legitimate nondiscriminatory reason" stage of the *McDonnell Douglas* framework.

legitimate nondiscriminatory reasons for promoting both Silvis and Norman over Coachman.  Specifically, EHS maintains that it promoted Silvis and Norman because they each had more high-level management experience (*i.e.,* experience supervising supervisors), including military experience and training that overlapped with the security manager job position.  In addition, EHS maintains that they had both performed well in their interviews and, in contrast to Coachman's several reprimands, had set good examples for other employees through professionalism and attendance.

Because EHS has identified these legitimate nondiscriminatory reasons for its promotion decisions, the burden shifts back to Coachman to show that the reasons were pretextual.  When the evidence is considered in the light most favorable to Coachman, as it must be on a motion for summary judgment, there is simply no genuine issue of material fact with respect to pretext.  The record does not contain sufficient evidence for a reasonable jury to conclude that EHS's reasons were pretextual, and Coachman has therefore failed to meet her burden.

Indeed, in her summary judgment pleadings, Coachman has essentially acknowledged that the decisions were not pretextual.  She admits, in Silvis' case, that "Wilkinson and Ray determined that Silvis was best qualified for the position because he had the most managerial experience in security, additional relevant managerial experience in the military, the most education, and he

8

performed the best in the interview."  She also admits that Tyson based his decision to hire Silvis on the panel's recommendation as well as his assessment of "the candidates' education, managerial experience, and performance during the interview" in making his hiring decision.  In Norman's case, Coachman admits that Wilkinson recommended Norman, and that Tyson hired him, after each concluded that Norman was the "best qualified of the internal applicants for the position because he had the most military experience [and] had received relevant leadership training from the military."

Even if these admissions were disregarded, Coachman has not come close to establishing that EHS's reasons were pretextual.  Where a pretext argument is based solely on the plaintiff's allegedly superior qualifications, as it is here, "the question is not who was a better applicant, but whether the disparity in qualifications is 'so apparent as virtually to jump off the page and slap you in the face.'" *Summerlin*, 2006 U.S. App. LEXIS 1247 (quoting *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001); *Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2001)).  In this case, EHS could easily and reasonably have concluded that both Silvis and Norman were more qualified for the security manager opening because they had military experience that Coachman lacked, more experience supervising supervisors, more relevant education and/or training, and cleaner disciplinary

9

records.  Nothing in the evidentiary record indicates that anything other than this happened.  Indeed, it would be hard for a reasonable jury to conclude, if limited to this record, that Coachman's qualifications are superior to those of Silvis.  Similarly, it is quite easy to see why a reasonable employer would deem Norman's military training, higher managerial experience and clean disciplinary record superior to Coachman's work history and college education.  In any event, her qualifications are certainly not so superior as to "jump off the page and slap you in the face."  Therefore, there is no issue of material fact and summary judgment is due to be granted.

## *Conclusion*

By separate order, the motion for summary judgment will be GRANTED.

DONE this 30th day of January, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE